May 15, 1911.

―――――o―――――

5320.

(Court of Appeal, Parish of Orleans.)

## WILLIAM E. CORNELIUS, (FOR HIMSELF AND MINOR SON), vs. MRS. ALINE FRERET MONTEGUT.

Involves only issues of fact.

Appeal from the Civil District Court, Division "A."

W. A. Bell, for plaintiff and appellant.

H. L. Favrot, for defendant and appellee.

ST. PAUL, J.—This case involves only issues of fact. The district judge saw and heard the witnesses, and having again read and re-read the evidence, disposed of the issues adversely to plaintiff.

That plaintiff's minor son suffered severe injuries at the time and place set forth in the petition is beyond question but the preponderance of the evidence does not show the fact or even the probability that these injuries were the result of any fault on the part of defendant's minor child.

The district judge gave written reasons for judgment, the gist whereof was, that he believed the version of the occurrence given by the only eye witness outside of the two boys themselves.

Before giving the reasons, it may be well to give the injured child's own version of the occurrence, together with a description of the scene of the occurrence immediately after it took place, and the nature of the blow received by the child; as testified to by witnesses other than the young child whose testimony was thus accepted by the district judge.

Plaintiff's son, then about ten years of age, claims that having refused a piece of candy to defendant's son, then about fourteen years old, the latter struck him "across the shoulder" with the back, "not the flat part," of a kitchen knife, knocking him senseless, so that he fell and was injured. He **describes**, as if he had **seen** the mark of the knife, and calls it "a little blue mark."

Another witness for plaintiff remembers the mark as "simply a red mark, * * * just under the left shoulder blade, * * * approximately three inches long and perhaps three-quarters of an inch wide."

When the child came to, he found himself, "not exactly in front of his (the other boy's) house," in front of which the blow had been struck; "near the curb, not on

the grass, but on the schillinger pavement, near the grass," which lay between the pavement and the curb.

His brother, somewhat older than himself, found blood on the pavement "by the telephone pole" about twenty feet from the other boy's house; and saw a piece of tooth which his mother picked up "by the telephone post, next to the pavement."

It may also be added that sewerage and water pipes have been laid quite extensively in this city for sometime past, which is a matter of public knowledge, and hence in the absence of proof that conditions had not changed photographs, taken nearly two years after the occurrence do not show conclusively the conditions prevailing at the time. But this is altogether immaterial. The condition of the pavement at the time is not in dispute and does not affect the merits of this case, whi h depend wholly upon the appreciation of the oral testimony adduced.

These preliminaries stated, the opinion of the district judge is here given. And the conclusions reached by him are now adopted as our own; to-wit;

### Reasons for Judgment.

"I gave careful attention to the witnesses introduced in this case and to their testimony. Sinて the submission I have read their testimony and all that appears in the record. That the plaintiff's son sustained severe and permanent injuries, I do not doubt; that he suffered much I do not doubt. But the defendant here did not inflict those injuries. She is sued on the allegation that her minor son's unlawful act caused the injury to plaintiff's son. If true she is liable, vicarious though her liability may be. I think that the little boy, William A. Bohne, gave a correct version of the trouble. He is a sturdy, manly, little fellow, a friend and playmate of both

— 360 —

boys involved in the trouble. He is intelligent and I believe told the truth. By his version defendant's boy with a pitcher of water and a kitchen knife was in his mother's flower beds in front of the house; that plaintiff's son came up and defendant's son asked some candy and was answered that he had none and that he then hit plaintiff's son on the back with the back of the knife and when he went to 'tap him' the second time, plaintiff's son dodged and started to go towards Magnolia Street and at the telephone post nearby tripped and fell and got up holding his mouth and went home. Defendant's boy was inside his mother's yard and plaintiff's boy on the banquette, a fence intervening. He described the blow as 'a tap.' 'Q. Did he hit him hard enough to hurt him?' A. 'No, sir.' The boys were friends and because the plaintiff's boy had no candy to give defendant's boy was hardly cause for the latter to deal or try to deal him a blow that would knock him senseless, his contact with the pavement knocking out his teeth and injuring him as proved.

"I do not believe that 'the tap' or blow or whatever it was, with the knife was intended to injure, I believe it was rather a prank or skylark between the two boys who were friends and still are. Boys are boys, and of their boyish ways every judge must take notice. The Supreme Court of our State in many cases has said that the court must consider the mischievous tendencies of children, this in cases where accident has happened by reason of dangerous machinery being left exposed and unguarded. The Turntable case is the authority. The principle here is the same.

"In getting away plaintiff's son either collided with the pole, or with the banquette, in his trip-up,

and fell, and received whatever injuries he sustained, including the injury that appeared as a red marks, on his left upper breast, under his shoulder.

"It is incredible that a blow with the knife, even if it were hard and dealt in malice, much less, a mere 'tap' with a kitchen knife, could have produced such results, as knocking plaintiff's son into insensibility and hurling him face down, violently, upon the ground.

"The plaintiff's boy was badly hurt, but not by the fault of defendant's son. In his hurt condition he was hardly a witness to be relied on, as to the occurrence. I believe he is a good boy, but dazed as he was, by the fall and injury to his face and mouth, he may well not remember. He doubtless thinks defendant's boy knocked him senseless, as he says in his testimony, but it seems to me impossible under all the facts proved.

"Plaintiff's other son, the brother of the injured boy, corroborates little Bohne, defendant's witness, for he says the blood and broken teeth (he picked up the teeth), were inflicted by the telegraph pole. I do not think the photographs taken a year or more after the accident, after sewerage and water work on the street, suffice to contradict these two boys, one defendant's witness, the other plaintiff's son, brother of the injured boy, as to place where the plaintiff's boy fell.

"Mr. Agnew was brought to prove the defendant's son was violent and vicious. His evidence was favorable to the boy, and not one iota against him. The record put in evidence does not help plaintiff's case. Defendant's son was put in Mr. Agnew's care, not for violence or malicious disposition, and Mr. Agnew speaks kindly of him. Proof

of singe facts (even if proof were made) does not prove general character.''

"It is complained that defendant did not testify. The answer is, she was not present and knew nothing. It is said defendant's boy was not called as a witness. If defendant's counsel thought his case was sufficiently grounded, without calling this boy, it was his privilege. No presumption arises from the fact that counsel did not call him.

"An assult and battery consists of angrily or wantonly laying hands upon, or applying force, to the person of another. The prankish 'tap' of one boy, by another, not in anger, but in play, or skylarking—both being friends is not an assault and battery.

"Every father of a family, or observer of boys, knows of their pranks, their slaps or 'taps', their feints and menacing gestures, as if to strike, and, in dodging or evading, many a boyish head has been made to ache by contact with some unobserved object.

"Unless intended to injure, maliciously or wantonly, or negligently, there is no legal liability, civil or criminal, attached to an act of its consequence such as the weight of the evidence here shows.

"Plaintiff's little boy was seriously injured and suffered much, but, under all the evidences and probabilities of the case, I do not think that defendant is liable. There is no presumption of fault from an accident. The plaintiff who alleges damage must prove that fault of defendant, or of defendant's employee, or child, caused it. A boyish prank, not malicious, or wanton, does not measure to the standard of an offense or fault. Under all the evidence as I have heard, read and studied it I think the case

here is 'damnum absque injuria.'

"Judgment for defendant.

(Signed)                              "T. C. W. ELLIS,

"Judge.

"New Orleans, February 7, 1911."

### Reason for Refusing New Trial.

"I have carefully read this motion and the brief in support, and have gone over the evidence again. Counsel is unjust in his criticism of my reasons in saying that there is no proof of sewerage work done on the street. He may be right in characterizing as 'impossible' my discription of the exact place where the red mark was found on the wounded boy. The red mark was in front, nearly above the left nipple, and just below the left shoulder. However, the evidence will show.

"I thought after careful study that this red mark was the result of the little boy's collision with the pole, and not from the knife, to which collision I conclude all his injuries were due. I do not regard the 'tap' with the knife (as I find) not in anger or wantonness, the proximate cause of the injury, but I do not care to go into discussion as to causa proxima, causa causans, causa sine qua non, and all that.

"Counsel complained verbally of Mr. Favrot's statement at the close of defendant's evidence, on page 8. My interpretation is that what counsel said as to Mrs. Montegut being called as a witness is not evidence, and that defendant closed his case.

"New trial refused.

"New Orleans, La., March 8, 1911.

"T. C. W. ELLIS,

"Judge."

For the foregoing reasons, it is now ordered that the

— 364 —

judgment appealed from be and it is hereby affirmed.

May 15, 1911.